**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

IN RE
**KOLOGIK, LLC, ET AL.,[1]**
    **DEBTORS.**

**CASE NO. 24-10311**
**CHAPTER 11**
**(JOINT ADMINISTRATION)**

**ORDER CONFIRMING FIRST IMMATERIALLY MODIFIED LIQUIDATING PLAN**
**OF THE DEBTORS RESOLVEKO, LLC, RESOLVEKO CAPITAL LLC, AND**
**RESOLVEKO CAPITAL II, LLC, FORMERLY KNOWN AS KOLOGIK, LLC,**
**KOLOGIK CAPITAL, LLC AND KOLOGIK CAPITAL II, LLC**
**DATED DECEMBER 12, 2024**

The court ("Bankruptcy Court") having:

a.    entered the *Order (I) Approving Solicitation Procedures and Forms of Ballots; (II) Establishing a Confirmation Schedule; (III) Approving the Form and Manner of Notice; and (V) Granting Related Relief* (the "Disclosure Statement Order") (P-218) on October 11, 2024, pursuant to which the Bankruptcy Court approved the adequacy of the *Disclosure Statement relating to Liquidating Plan of the Debtors ResolveKo, LLC; ResolveKo Capital, LLC; and ResolveKo Capital II, LLC formerly known as Kologik, LLC; Kologik Capital, LLC; and Kologik Capital II, LLC* (P-182) *as immaterially amended* (P-208) (the "Disclosure Statement"), under section 1125 of the Bankruptcy Code and authorized solicitation of the *Liquidating Plan of the Debtors ResolveKo, LLC; ResolveKo Capital, LLC; and ResolveKo Capital II, LLC formerly known as Kologik, LLC; Kologik Capital, LLC; and Kologik Capital II, LLC* (P-218), as was immaterially modified by in the *First Immaterially Modified Liquidating Plan of the Debtors ResolveKo, LLC; ResolveKo Capital, LLC; and ResolveKo Capital II, LLC formerly known as Kologik, LLC; Kologik Capital, LLC; and Kologik Capital II, LLC dated December 12, 2024*

---

[1] The debtors and debtors in possession these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of their respective Employer Identification Numbers, are as follows: ResolveKo, LLC (formerly Kologik, LLC) (3729), Case No. 24-10311; ResolveKo Capital LLC (formerly Kologik Capital, LLC) (3729) Case No. 24-10312; and ResolveKo Capital II, LLC (formerly Kologik Capital II, LLC) (3729), Case No. 24-10313. The Debtors' mailing address is: 300 Main St., Ste. #1600, Baton Rouge, LA, 70801.

annexed hereto (the "<u>Plan</u>");

  b.  set a December 3, 2024, deadline for filing objections to confirmation of the Plan (the "<u>Objection Deadline</u>");

  c.  set December 3, 2024, as the deadline for voting on the Plan (the "<u>Voting Deadline</u>") in accordance with the Disclosure Statement Order;

  d.  set a hearing on confirmation of the Plan for December 12, 2024 at 9:00 a.m. CST (the "<u>Confirmation Hearing</u>");

  e.  reviewed: (i) the Plan, (ii) the Disclosure Statement; and (iii) Declaration of Mailing (P-237);

  f.  reviewed the Debtors' Notice of Filing of Plan Supplement (P-314);

  g.  reviewed the Debtors' Memorandum of Law in Support of Confirmation of the Plan (P- ) (the "<u>Confirmation Brief</u>") and the Debtors' exhibits introduced and admitted at the Confirmation Hearing, the following the "<u>Confirmation Exhibits</u>"):

| | |
|---|---|
| **1.** | Redline Confirmation Order (P-343) |
| **2.** | Schedule of Sale Proceeds (P-341-1) |
| **3.** | Budget (P-341-2) |
| **4.** | Claims Analysis Schedule of Sale Proceeds (P-341-3) |
| **5.** | Professional Fee Reserve Estimate (P-341-4) |
| **6.** | Schedule of Retained Causes of Action |

| | | |
|---|---|---|
| | | (P-337) |
| | 7. | Schedule of Rejected and Assumed Executory Contracts and Unexpired Leases Contracts (P-314-2) |
| | 8. | Plan Expense Reserve Estimate (P-314-3) |
| | 9. | Order Approving Solicitation Procedures and Forms of Ballots, (II) Establishing Confirmation Schedule; (III) Approving the Form and Manner of Notice (P-215) |
| | 10. | Declaration of Mailing (P-237) |
| | 11. | Voting Tabulation & Verification (with Ballots) (P-335-2) |
| | 12. | Settlements (in globo) |
| | 13. | Declaration of K. Thayer in Support of Confirmation (P-341) |

h.      reviewed the record of these Chapter 11 Cases, including no objections to confirmation of the Plan having been filed by the Objection Deadline; and

i.      heard the statements and arguments made by counsel in support of confirmation of the Plan and the testimony of the Debtors' Chief Restructuring Officer Kim E. Thayer;

Now, therefore, after due deliberation thereon and good cause appearing, the Bankruptcy Court makes the following findings of fact and issues the following conclusions of law:

### FINDINGS OF FACT & CONCLUSIONS OF LAW

1.    **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record during the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.    **Filing Date**.  On April 23, 2024 (the "Petition Date"), Kologik, LLC; Kologik Capital, LLC; and Kologik Capital II, LLC (the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors were and continue to be eligible for relief under Bankruptcy Code section 109 of the Bankruptcy Code.

3.    **Jurisdiction; Venue**.  The Bankruptcy Court has jurisdiction over these chapter 11 cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(L).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  See Petitions, P-1, (reflecting Kologik LLC's sole office is located in Baton Rouge, Louisiana). The Bankruptcy Court has authority to issue this Confirmation Order as a final order.

4.    **Committee Formation**.  No committees have been formed in these Chapter 11 Cases.

5.    **Solicitation and Notice**.  The Disclosure Statement has been approved and the Bankruptcy Court approved the manner of solicitation of votes on the Plan.  See Disclosure Statement Order.  The Debtors solicited the Plan in the manner and form approved by the Bankruptcy Court. The Debtors served a Notice of Confirmation on all parties and supplied copies of the Plan, Disclosure Statement, and form of Ballot on all creditors solicited to vote in accordance

with the Disclosure Statement Order and applicable Bankruptcy Rules.  This notice was adequate under the circumstances.  No other or further notice is necessary or required.

6.    **Modifications of the Plan**.  There have been no modifications to the Solicited Plan.

7.    **Judicial Notice.**  The Bankruptcy Court takes judicial notice of the docket maintained in these jointly administered Chapter 11 Cases by the Clerk of Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at hearings in the Chapter 11 Case.

8.    **Compliance with the Applicable Provisions of the Bankruptcy Code**.  The Debtors have met their burden of proving the elements of Bankruptcy Code section 1129 by a preponderance of the evidence, which is the applicable standard.

9.    **Voting**.  Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Ballot Tabulation, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Order Approving Disclosure Statement, the Bankruptcy Code, and the Bankruptcy Rules.

10.    As reflected in the Ballot Tabulation, pursuant to Bankruptcy Code sections 1124 and 1126, the sole members of impaired Classes 6 (TSB Ventures, LLC) and 7 (LaFactor, LLC) have voted to accept the Plan, and nine (9) members of impaired Class 9 (General Unsecured Creditors) holding $3,237,785.86 in claims for voting purposes voted to accept the Plan.  No creditor voted to reject the Plan.  The sole member of Class 8 (Jackson Smith Thomas) did not submit a ballot.

11.    Therefore, three of the impaired classes entitled to vote on the Plan voted to accept the Plan, satisfying the standards required by Bankruptcy Code section 1126(c).

12.    **Bankruptcy Rule 3016**.  The Plan is dated and the Debtors are the proponents of

the Plan, thus satisfying Bankruptcy Rule 3016(a).  The Disclosure Statement satisfies Bankruptcy Rule 3016(b).  *See* Disclosure Statement Order.

**13.     Plan Compliance with the Bankruptcy Code (11 U.S.C.  §1129(a)(1)).**  As further detailed below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code section 1129(a)(1).

**14.     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**  Article III of the Plan designates the following ten (10) Classes of Claims and Equity Interests: Class 1 (Priority Non-Tax Claims); Class 2 (Paid Secured Claim of Riva Ridge Master Fund, Ltd.); Class 3 (Paid Secured Claim of LaFactor (as holder of Mississippi River Bank Notes); Class 4 (Mississippi River Bank); Class 5 (LaFactor as former holder of Mississippi River Bank Notes ); Class 6 (TSB Ventures LLC); Class 7 (LaFactor, LLC); Class 8 (Jackson Smith Thomas); Class 9 (General Unsecured Claims); and Class 10 (Equity Interests).  *See* Plan, Article III.  Each of the Claims or Equity Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Equity Interests in such Class and such classifications were otherwise acceptable to each voting Class.  Valid business, legal, and factual reasons exist for separately classifying the various Claims and Equity Interests pursuant to the Plan and such claims are of a different rank, status, or character, as the case may be, and the creation of such Classes does not unfairly discriminate between holders of Claims and Equity Interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**15.     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**  Article III of the Plan designates Classes 6, 7, 8, 9, and 10 as Impaired by the Plan, within the meaning of section 1124 of the Bankruptcy Code.  Articles III(C)(1)-(10) of the Plan specify the treatment of Claims and Equity Interests in such Classes.  The Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

16.    **No Discrimination (11 U.S.C. § 1123(a)(4)).**   The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed or agrees to a less favorable treatment on account of such Claim or Equity Interest.   The Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

17.    **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**   The Plan provides adequate and proper means for the implementation of the Plan in Article V as required by section 1123(a)(5) of the Bankruptcy Code.   The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

18.    **Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6).**   Article V of the Plan provides that because the Equity Interests are to be extinguished, as of the Effective Date, the Plan Agent shall have the sole authority to act for the Debtors and neither the Board of Managers nor the Equity Interest Holders shall have any power or control over the Debtors.   *Id*.   The Equity Interests in the Debtors shall be extinguished, and the Debtors dissolved. See Plan, Article V(C).   As such, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

19.    **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).**   The Plan Agent shall have the sole authority to administer the Plan and act on behalf of the Debtors through dissolution.   Plan, Article V(C).   The foregoing is consistent with the interests of Holders of Claims and Holders of Equity Interests, and with public policy.   As such, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

20.    **Additional Plan Provisions (11 U.S.C. § 1123(b)).**   The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.   The failure to address a provision of the

Bankruptcy Code specifically in these Findings and Conclusions or the Confirmation Order shall not diminish or impair the effectiveness of the Confirmation Order.

21.    **Impairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1**)). As contemplated by section 1123(b)(1) of the Bankruptcy Code, Classes 6 (TSB Ventures, LLC), 7 (LaFactor, LLC), 8 (Jackson Smith Thomas), 9 (General Unsecured Creditors), and 10 (Equity Interests) are Impaired by the Plan.   Accordingly, the Plan is not inconsistent with section 1123(b)(1) of the Bankruptcy Code.

22.    **Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))**.   In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides that, all Executory Contracts and Unexpired Leases not identified in the Plan Supplement as a contract to be assumed shall be deemed rejected.   The Confirmation Order is a final order that these Executory Contracts and Unexpired Leases are rejected.   The Confirmation Order shall also constitute a final order approving the assumption of the Assumed Contracts with a $0 cure. Accordingly, the Plan is not inconsistent with section 1123(b)(2) of the Bankruptcy Code.

23.    **Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**   In accordance with Bankruptcy Code section 1123(b)(3)(A) and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan and with the support of the Debtors and all major parties in interest, the various settlements to be presented to this Court (the "Settlements") and the provisions of the Plan constitute a good-faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that all Holders of Claims or Equity Interests may have with respect to any Allowed Claim or Equity Interest or any distribution to be made on account of such Allowed Claim or Equity Interest. The Exculpated Parties are sufficiently narrow and permissible, and the scope of exculpation limited.   Such compromises and settlements are fair, equitable, and reasonable and in

the best interests of the Debtors and their Estates.

24.     **Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4)).**  The Plan does not provide for the sale of all or substantially all assets of the Debtors.

25.     **Modification of Creditor Rights (11 U.S.C. 1123(b)(5)).**   In accordance with Bankruptcy Code section 1123(b)(5), Article III of the Plan modifies the rights of Holders of Claims in Classes 6 through 9.  Accordingly, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

26.     **Cure of Defaults (11 U.S.C. § 1123(d)).**  There is a single contract identified to be assumed and there has been no objection to the proposed cure of $0.

27.     **Debtors Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Order Approving Disclosure Statement, including Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017, 3018, and 3019, thus satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code.

28.     **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**   The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the record of the Chapter 11 Cases, including the Declarations and the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in these Chapter 11 Cases.  The Plan is proposed with the legitimate and honest purpose of maximizing the value of proceeds of the Sale of the Debtors' Assets and effectuating a liquidation and dissolution of the Debtors.  Further, the very limited exculpation and the injunction provisions of the Plan are consistent with sections 105, 362, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary

and appropriate to the successful liquidation of the Debtors' Estates. Accordingly, the Plan and the related documents have been filed in good faith and the Debtors have satisfied their obligations under section 1129(a)(3) of the Bankruptcy Code.

29.     **Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4)).** All payments made or to be made by the Debtors or Liquidating Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

30.     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** The Plan satisfies section 1129(a)(5) of the Bankruptcy Code. The Plan provides that as of the Effective Date, the terms of the current members of the board or managers of the Debtors, as the case may be, will automatically expire. The Plan Agent shall have the sole authority to act on behalf of the Debtor through dissolution of the Debtor. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

31.     **No Rate Changes (11 U.S.C. § 1129(a)(6)).** No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

32.     **Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).** The Plan satisfies section 1129(a)(7) of the Bankruptcy Code because each Holder of a Claim or Equity Interest either: (a) has voted to accept the Plan, or (b) shall receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code on such date. In addition, the claims analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or

adduced at, prior to, or in declarations or affidavits in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was proffered, adduced, and/or presented; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim or Equity Interest in such Class shall receive under the Plan on account of such Allowed Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

33. **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** As is set forth in the Ballot Tabulation, Class 6 (TSB Ventures, LLC), Class 7 (LaFactor, LLC), and Class 9 (General Unsecured Creditors) have affirmatively (and unanimously) voted to accept the Plan. As such, section 1129(a)(8) of the Bankruptcy Code of the Bankruptcy Code satisfied with respect to these Classes of Claims. Class 10 (Equity Interests) are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code because the Holders Equity Interests will not receive or retain any property on account of their Equity Interests in the Debtors. The Plan may nevertheless be confirmed because the Plan otherwise satisfies all elements of section 1129(a) of the Bankruptcy Code and satisfies section 1129(b) of the Bankruptcy Code because the Plan does not discriminate unfairly and is fair and equitable.

34. **Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

35. **Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).** Class 6 (TSB

Ventures, LLC), Class 7 (LaFactor, LLC), and Class 9 (General Unsecured Creditors) are three of the Classes which are Impaired under the Plan and entitled to vote. These Classes voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code. Specifically, as set forth in the Ballot Tabulation and with respect to parties that submitted a valid ballot:

| CLASSES | TOTAL BALLOTS RECEIVED | | | |
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) |
|---|---|---|---|---|
| Class 6 TSB Ventures, LLC | $7,549,510.00 (100%) | 1 (100%) | $0 (0%) | 0 (0%) |
| Class 7 LaFactor, LLC | $1,840,510 (100%) | 1 (100%) | $0 (0%) | 0 (0%) |
| Class 8 Jackson Smith Thomas | $0 | 0 | $0 | 0 |
| Class 9 - General Unsecured Claims | $3,327,785.86 (100%) | 9 (100%) | $0 (0%) | 0 (0%) |

36. **Feasibility (11 U.S.C. § 1129(a)(11)).** All Allowed Claims and Equity Interests shall be paid or otherwise satisfied in accordance with the terms of the Plan, the Plan Supplement, the Disclosure Statement, this Confirmation Order, and any other documents or agreements filed with the Bankruptcy Court by the Debtors that are necessary to implement the Plan, including any appendices, amendments, modifications, supplements, exhibits and schedules relating to the Plan, the Plan Supplement, or the Disclosure Statement (collectively, the "Plan Documents"). The

evidence proffered, adduced, and/or presented at the Confirmation Hearing (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered, (b) utilizes reasonable and appropriate methodologies and assumptions, (c) has not been controverted by other evidence, and (d) establishes that the Plan is feasible. The Liquidating Debtors will have sufficient cash to be able to fulfill their obligations under the Plan and dissolve under state law.

37.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).**  Article II of the Plan provides that: (a) all fees due and payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors and/or the Plan Agent and the Liquidating Debtors and/or the Plan Agent shall fulfill all reporting obligations for post-confirmation reporting to the Office of the United States Trustee; and (b) the Liquidating Debtors and Plan Agent may request and be entitled to have the Chapter 11 Cases be administratively closed after the Effective Date. Therefore, the Plan satisfies the requirements of section 1129(a)(12) of Bankruptcy Code.

38.    **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).**  There are no retirement income plans and welfare benefit plans for the benefit of the Debtors' officers, directors, or employees.  Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

39.    **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).**  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

40.    **Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).**  The Debtors are not individuals. Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**41.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).**  The Debtors are moneyed, business, or commercial limited liability companies, as the case may be.  Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**42.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).**  Although Class 10 (Equity Holders) is a rejecting Class (the "Rejecting Class") for purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding such rejection because, based upon the record before the Bankruptcy Court and the treatment provided to such Claims and Equity Interests, the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Class of  Equity Interests, and the Plan satisfies all the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except section 1129(a)(8).  First, the Plan does not discriminate unfairly, because no Class of Claims or Equity Interests having similar legal rights to the Equity Interests in the Rejecting Class is receiving different treatment under the Plan.  Second, the Plan is "fair and equitable" as to the Rejecting Class because (a) no claims or interests junior to Class 10 will receive or retain any property under the Plan on account of such junior claims or interests and (b) no interests junior to Class 10 will receive or retain any property under the Plan on account of such junior interests.  The evidence in support of confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims and Equity Interests and the requirements for confirmation of the Plan under section 1129(b) of the Bankruptcy Code: (a) is reasonable, persuasive, credible, and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other credible evidence.  Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with

respect to the Rejecting Class, and the Plan may be confirmed notwithstanding the deemed rejection by the Rejecting Class.

43. **Only One Plan (11 U.S.C. § 1129(c)).**  The Plan is the only plan filed in the Chapter 11 Cases.  Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

44. **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

45. **Good-Faith Solicitation (11 U.S.C. § 1125(e)).**  Based on the record before the Bankruptcy Court in these Chapter 11 Cases and the Ballot Tabulation, the Debtors have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

46. **Satisfaction of Confirmation Requirements.**  Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

47. **Implementation**.  All documents necessary to implement the Plan, including the Plan Documents and other documents contained in the Plan Supplement and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, and entry into and consummation of the transactions contemplated by each such document and agreement is in the

best interests of the Debtors, their Estates, and the Holders of Claims or Equity Interests and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal, state, or local law.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The Debtors are authorized, without any further notice to, or action, order, or approval of, the Bankruptcy Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating to the Plan and the Plan Documents and to perform their obligations under such agreements, documents, instruments, and certificates in accordance with the Plan and the Plan Documents.

48.     **Good Faith of the Debtors.**  The Debtors, and the members, officers, directors, agents, financial advisers, attorneys, employees, affiliates, and representatives have acted in good faith (a) in negotiating, formulating, and proposing the Plan and agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (b) in soliciting acceptances to the Plan.

49.     **Executory Contracts and Unexpired Leases**.  The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, and rejection of Executory Contracts and Unexpired Leases pursuant to Article VI of the Plan, including adequate assurance of future performance.

50.     **Vesting of Assets.**  Pursuant to section 1141(b)–(c) of Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order, (a) the property of each Estate and each Debtor and all retained Causes of Action ("Retained Actions") shall vest in each respective Liquidating Debtor on the Effective Date free and clear of all Claims, Liens, and interests to the maximum extent permitted by section 363 of the Bankruptcy Code and (b) all such Claims, Liens, and interests are extinguished.  Such vesting does not constitute a voidable transfer under the

Bankruptcy Code or applicable non-bankruptcy law. Notwithstanding the forgoing, entry of an order approving any of the Settlements that releases any of the Retained Actions shall constitute an order deeming that any released Cause of Action in the Settlement(s) is no longer a Retained Action.

51.     **Injunction and Exculpation.**    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction and exculpation set forth in Articles VIII and XI of the Plan, because, among other things, these provisions are an integral part of the Debtors' Plan, and are necessary and appropriate for the Plan's implementation,. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article VIII of the Plan if, as has been established here based upon the record in the Chapter 11 Cases, the Declarations, the evidence presented at the Confirmation Hearing, such provisions (a) were integral to the integrated and mutually dependent terms and conditions of the settlement among the various parties in interest embodied in the Plan and are important and essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (b) confer substantial benefits on the Debtors' Estates and creditors, (c) are fair, equitable and reasonable, and (d) are in the best interests of the Debtors, their Estates, and all parties in interest. Further, the exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.  Based upon the record of these Chapter 11 Cases, the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the injunction and exculpation in the Plan are consistent with the Bankruptcy Code and applicable law.

52.     **Compromise and Settlement.**    Pursuant to Bankruptcy Rule 9019, in consideration of the distributions and other benefits provided under the Plan, the provisions of the

Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims or Equity Interests in any Class are intended to be, and shall be, final.

**53.　Likelihood of Satisfaction of Conditions Precedent.** Each of the conditions precedent to the Confirmation Date and Effective Date, as set forth in Article XII of the Plan, has been satisfied or waived in accordance with the provisions of the Plan or is reasonably likely to be satisfied or waived prior to the Confirmation Date and Effective Date, as applicable.

**54.　Stay Abrogated**. The stay of effectiveness of the Confirmation Order provided for by Bankruptcy Rule 3020(e) should be abrogated, under the authority provided for by Bankruptcy Rule 3020(e), so the Debtors can effectuate the terms of the Plan and facilitate the occurrence of the Effective Date.

Based upon the forgoing findings, and upon the record made before the Bankruptcy Court at the Confirmation Hearing, and good sufficient cause appearing therefor, it is

**ORDERED, ADJUDGED, AND DECREED THAT**:

**A.**　The Plan attached to this Confirmation Order as an exhibit and the Plan's terms are incorporated by reference into and are an integral part of this Confirmation Order. Any capitalized terms not otherwise defined in this Confirmation Order shall have the same meaning as the Plan. In the event of conflict between the Plan and this Confirmation Order, this Confirmation Order controls. In the event of a conflict between the Findings and Conclusions and the Plan, the Findings and Conclusions control.

**B.**　Subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on or after of the Confirmation Date, the provisions of the Plan and the Confirmation Order shall be immediately effective and enforceable and binding upon any Holder of a Claim against, or Equity Interest in, the Debtor, and such Holder's respective

successors and assigns (whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor counterparties to executory contracts, unexpired leases, and any other prepetition agreements.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.  Pursuant to Bankruptcy Rule 3020(e), this Confirmation Order is immediately effective and shall not be stayed following its entry.

C.      Upon the entry of the Confirmation Order, the Liquidating Debtors are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise make effective all documents arising in connection with this Confirmation Order, prior to, on, and after the Effective Date.  The approvals and authorizations specifically set forth in the Confirmation Order are not intended to limit the authority of the Liquidating Debtors to take all actions necessary or appropriate to implement, effectuate, and consummate all documents or transactions contemplated by the Plan or the Confirmation Order.

D.      Except as otherwise specifically provided by the Plan, this Confirmation Order shall constitute an injunction to the full extent allowed under sections 1141 and 524 of the Bankruptcy Code, and all present and former Holders of Claims against and Equity Interests in the Debtors, their respective successors and assigns, including the Reorganized Debtors, all other parties-in-interest in the Chapter 11 Cases (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring

property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors shall be enjoined from pursuing any action on account of or related to any Claim or Equity Interest against the Debtors or Liquidating Debtors through any conduct or proceeding whatsoever, with respect to discharged, released, enjoined or exculpated claims, and as against any person subject to or deriving rights from the discharge and/or any release or exculpation arising under the Plan, including, but not limited to, the Debtors and Liquidating Debtors.

E.      Unless otherwise provided, all injunctions or stays set forth in sections 105 and 362 of the Bankruptcy Code remain in full force and effect until the Effective Date rather than the Confirmation Date.  Nothing in the Plan or this Confirmation Order, however, shall be construed as a limitation of the permanent injunctions provided for in the Plan and this Confirmation Order.

F.      This Confirmation Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.   All such state and other governmental authorities are directed to accept such documents for filing and implementation.

G.      The Exculpation and Injunction provisions contained in the Plan and set forth below, are approved pursuant to Bankruptcy Rule 3020(c).

H.      The Plan shall not become effective unless and until the conditions set forth in Article XII have been satisfied or waived pursuant to Article XII of the Plan.

I.      The Bankruptcy Court shall retain jurisdiction over any matters arising under the Bankruptcy Code, arising in or out of, or related to, the Chapter 11 Cases or the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, to the extent provided and as set forth in the

Plan, including Article X of the Plan, subject to and only to the extent provided under applicable law.

**J.**     The Liquidating Debtors shall file a notice of entry of this Confirmation Order within ten (10) Business Days after entry of this Confirmation Order and cause such notice to be served on all parties required by Bankruptcy Rule 2002(f)(7).

**K.**     On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**L.**     Upon the Effective Date, (a) the property of each Estate and each Debtor and all Retained Causes of Action shall vest in each respective Liquidating Debtor on the Effective Date free and clear of all Claims, Liens, and interests to the maximum extent permitted by Bankruptcy Code section 363, and (b) all such Claims, Liens, and interests are extinguished.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

**M.**     Upon notice of the Effective Date the Debtors shall be entitled, upon submission of an ex parte motion, to an order administratively closing these Chapter 11 Cases pending further order of the Bankruptcy Court.

**N.**     The Plan Agent is vested with the authority to take any action necessary to dissolve the Liquidating Debtors after the Plan has been administered.  After the issuance of the Final Decree and making of all Distributions and Residual Distributions, the Liquidating Debtors are deemed to have satisfied all liabilities for purposes of such dissolution.  The Bankruptcy Court has competent jurisdiction to decree dissolution of the Debtors under La. Rev. Stat. § 12:1335.  Upon completion of all Distributions and Residual Distributions under the Plan, the Plan Agent shall file a Notice of Completion of All Distributions and thereafter, this Confirmation Order shall be deemed a decree of dissolution of the Debtors.

**O.**     All fees due and payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors and/or the Plan Agent and the Liquidating Debtors and/or the Plan Agent shall fulfill all reporting obligations for post-confirmation reporting to the Office of the United States Trustee.

**P.**     If any of the provisions of this Confirmation Order are later reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, the reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and any amendments or modifications to any of the foregoing.

**Q.**     This Confirmation Order is a final order that is immediately effective upon entry and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**R.**     The stay of effectiveness of this Confirmation Order provided for by Bankruptcy Rule 3020(e) is abrogated.

Baton Rouge, Louisiana, December 13, 2024.

<u>/s/ Michael A. Crawford</u>
**MICHAEL A. CRAWFORD**
**UNITED STATES BANKRUPTCY JUDGE**

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

IN RE

| | |
|---|---|
| **KOLOGIK, LLC, ET AL.,**[1] | **CASE NO. 24-10311** |
| **DEBTORS.** | **CHAPTER 11** |
| **(JOINT ADMINISTRATION)** | |

## FIRST IMMATERIALLY MODIFIED LIQUIDATING PLAN OF THE DEBTORS RESOLVEKO, LLC, RESOLVEKO CAPITAL LLC, AND RESOLVEKO CAPITAL II, LLC, FORMERLY KNOWN AS KOLOGIK, LLC, KOLOGIK CAPITAL, LLC AND KOLOGIK CAPITAL II, LLC DATED DECEMBER 12, 2024

---

### Counsel for the Debtors and Debtors-in-Possession

Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

and

Erin K. Arnold (LA #29069)
Amelia L. Hurt (LA #36817)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: erin.arnold@kellyhart.com
Email: amelia.hurt@kellyhart.com

---

[1] The debtors and debtors in possession these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Kologik, LLC (3729), Case No. 24-10311; Kologik Capital, LLC (3729) Case No. 24-10312; and Kologik Capital II, LLC (3729), Case No. 24-10313. The Debtors' mailing address is: 300 Main St., Ste. #1600, Baton Rouge, LA, 70801.

## DEBTORS' CHAPTER 11 PLAN OF LIQUIDAION

ResolveKo, LLC, ResolveKo Capital LLC, and ResolveKo Capital II, LLC, formerly known as Kologik, LLC, Kologik Capital, LLC and Kologik Capital II, LLC, as Debtors and Debtors-in-Possession in the above-captioned case (the "Debtors"), propose the following chapter 11 plan of liquidation (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtors. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan. The Debtors are the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents. All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

# TABLE OF CONTENTS

ARTICLE I.    RULES    OF    INTERPRETATION,    COMPUTATION    OF    TIME,
GOVERNING LAW AND DEFINED TERMS.................................................................7
   A.          Rules of Interpretation, Computation of Time and Governing Law.....................7

   B.          Defined Terms ...........................................................................................7

ARTICLE II.    ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ................16
   A.          Administrative Expense Claims...................................................................16

   B.          Professional Fee Claims.............................................................................16

   C.          Priority Tax Claims...................................................................................17

   D.          United States Trustee Fees..........................................................................17

ARTICLE III.   CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
EQUITY INTERESTS.......................................................................................18
   A.          Summary of Classification and Voting Rights ...............................................18

   B.          Elimination of Vacant Classes ....................................................................19

   C.          Classes and Treatment ..............................................................................19

      1.     CLASS 1 – Priority Non-Tax Claims ..........................................................19

      2.     CLASS 2 – Paid Secured Claim of Riva Ridge Master Fund, Ltd...........................19

      3.     CLASS 3 – Paid Secured Claim of LaFactor (as holder of Mississippi River Bank
Notes)...................................................................................................20

      4.     CLASS 4 –Mississippi River Bank Contingent Claim for Indemnity ......................20

      5.     CLASS 5 –LaFactor, LLC Contingent Claim for Indemnity ..................................21

      6.     CLASS 6 –Secured Claim of TSB Ventures, LLC .............................................21

      7.     CLASS 7 –Secured Claim of LaFactor, LLC ..................................................21

      8.     CLASS 8 –Secured Claim of Jackson Smith Thomas.............................................22

      9.     CLASS 9 –General Unsecured Claims...........................................................22

     10.    CLASS 10 –Membership/Equity Interests .....................................................23
   D.          Controversies Regarding Impairment. ...........................................................23

ARTICLE IV.   ACCEPTANCE OR REJECTION OF THE PLAN .........................................23
   A.          Voting Classes ........................................................................................23

   B.          Voting Rights as to Confirmation of the Plan, Procedural Requirements ..............23

C.        Acceptance by Impaired Classes ..........................................................................24

D.        Non-Consensual Confirmation ...........................................................................24

ARTICLE V.    MEANS FOR IMPLEMENTATION OF THIS PLAN ...................................24
A.        Summary ............................................................................................................24

B.        Vesting of Estate Property in the Liquidating Debtors. .......................................25

C.        Continuation of Limited Operations and Ultimate Dissolution of the
Liquidating Debtors. ..........................................................................................................25

D.        General Powers of the Plan Agent. ....................................................................25

E.        Resignation/Removal of the Plan Agent. ...........................................................27

F.        Appointment of Successor Plan Agent. ..............................................................27

G.        Plan Agent Compensation ...................................................................................28

H.        Plan Expense Reserve .........................................................................................28

I.        Plan Funding ......................................................................................................28

J.        Vesting of Assets and Causes of Action .............................................................28

K.        Delivery of Distributions and Undeliverable or Unclaimed Distributions. ...........29

    1.    Delivery of Distributions in General ..........................................................29

    2.    Undeliverable Distributions and Unclaimed Property...............................29

    3.    Manner of Payment Pursuant to the Plan .................................................29

    4.    Compliance with Tax Requirements/Allocations ......................................30

ARTICLE VI.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES        30
A.        Assumption and Rejection ...................................................................................30

B.        Rejection Claim ..................................................................................................31

C.        Cure of Assumed Executory Contracts and Unexpired Leases ............................31

D.        Insurance Policies. ..............................................................................................32

E.        Reservation of Rights...........................................................................................32

ARTICLE VII. PURSUIT OF CLAIM OBJECTIONS AND CAUSES OF ACTION ...............32
A.        Objection Process................................................................................................32

4

B.      Filing of Claims and Causes of Action by Liquidating Debtors.............................33

C.      Disallowance of Late Filed Proofs of Claim.............................................................33

ARTICLE VIII.   EFFECT OF CONFIRMATION ......................................................................33
A.      Legally Binding Effect..............................................................................................33

B.      Plan Injunction. ........................................................................................................33

C.      Limited Protection of the Exculpated Parties ..........................................................34

D.      Indemnification. .......................................................................................................35

E.      Preservation and Retention of Claims and Rights. ..................................................35

ARTICLE IX.   MODIFICATIONS AND AMENDMENTS ......................................................35
ARTICLE X.   RETENTION OF JURISDICTION ....................................................................36
ARTICLE XI.   SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS
       37
A.      Settlement, Compromise, and Release of Claims and Interests..............................37

B.      Release of Liens. ......................................................................................................38

C.      Setoffs. .....................................................................................................................38

D.      Recoupment. .............................................................................................................39

E.      Document Retention. ................................................................................................39

F.      Reimbursement or Contribution. .............................................................................39

ARTICLE XII. CONDITIONS   PRECEDENT   TO   CONFIRMATION   AND   THE
EFFECTIVE DATE..........................................................................................................................39
A.      Conditions Precedent to Confirmation.....................................................................39

B.      Conditions Precedent to the Effective Date. ...........................................................39

       1.      The Bankruptcy Court shall have entered the Confirmation Order and the
       Confirmation Order shall not have been stayed.......................................................... 40

C.      Waiver of Conditions.................................................................................................40

D.      Filing Notice of Effective Date..................................................................................40

ARTICLE XIII.   MISCELLANEOUS PROVISIONS ...............................................................40
A.      Immediate Binding Effect.........................................................................................40

B.      Severability of Plan Provisions.................................................................................40

C.      Successors and Assigns.............................................................................................40

D.   Notices ................................................................................................................41

E.   Post-Confirmation Reporting Requirements..........................................................41

F.   Reservation of Rights...........................................................................................41

G.   Governing Law ....................................................................................................41

H.   Continuing Viability of Other Orders/Agreements................................................42

I.   Exhibits ...............................................................................................................42

J.   Compliance with Tax Requirements......................................................................42

K.   Further Assurances...............................................................................................42

## ARTICLE I.    RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

**A.    Rules of Interpretation, Computation of Time and Governing Law**

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America. The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

**B.    Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

"Administrative Expense Claim" means any Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors; and (b) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtors during the Chapter 11 Cases and a Professional Fee Claim.

"Administrative Expense Claims Bar Date" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, **5:00 p.m. (prevailing Central Time) on such date that is twenty-one (21) days after the Effective Date**.

"Administrative Expense Claims Objection Deadline" means, with respect to any Administrative Expense Claim, the later of (a) thirty (30) days after the Effective Date and (b) thirty (30) days after the timely Filing of such Administrative Expense Claim; provided, however, that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Debtors.

"Affiliate" of any Person means any Entity that, with respect to such Person, either (i) is an "affiliate" as defined in section 101(2) of the Bankruptcy Code, or (ii) is an "affiliate" as defined in Rule 405 of the Securities Act of 1933, or (iii) directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. For the purposes of this definition, the term "control" (including, without limitation, the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction in any respect of the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

"Allowed" means with respect to Claims: (a) any Claim, proof of which is timely filed by the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a proof of Claim is not or shall not be required to be filed); (b) any Claim that is listed in the schedules of assets and liabilities as not contingent, not unliquidated, and not disputed, and for which no proof of Claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that, with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed at any time prior to or after the Effective Date within the applicable period of time, if any, fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.  In no event shall the Allowed amount of any Claim exceed 100 percent of the principal amount of such Claim or, except as expressly provided herein, include any amount for interest accruing after the Petition Date.  Any Claim that (x) has been or is hereafter listed in the schedules of assets and liabilities as contingent, unliquidated, or disputed, and for which no proof of Claim is or has been timely filed, or (y) is enjoined or released pursuant to the Plan, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, and no Claim that is a Claim under Section 502(e) of the Bankruptcy Code shall be Allowed unless such Claim is fixed prior to the Effective Date.  For the avoidance of doubt, a Proof of Claim filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

"Allowed Claim or Equity Interest" means a Claim or an Equity Interest of the type that is or has been Allowed.

"Approved Allowed Claims and Distribution Schedule" means the Final Order of the Bankruptcy Court approving the final schedule of Allowed Claims, both Secured and

Unsecured, including the payment addresses of the Holders of Allowed Claims, and the schedule of proposed Distributions to the Holders of Allowed Claims to be made on the Distribution Date.

"Assets" means all of the rights, titles, and interests of the Debtors or Liquidating Debtors, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtors' books and records, and the Causes of Action.

"Asset Sale" means that certain sale pursuant to the *Order Authorizing and Approving (i) Sale of Debtors' Assets Free and Clear of All Claims, Liens, Encumbrances and Interests pursuant to asset Purchase Agreement, (ii) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (ii) Granting Related Relief* [Dkt. No. 135].

 "Available Cash" means any Cash in excess of the amount of, the Plan Expense Reserve and the Professional Fee Reserve including the proceeds of any Avoidance Action or Cause of Action.

"Avoidance Actions" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

"Ballot" means the form(s) distributed to holders of Impaired Claims entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Louisiana.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Middle District of Louisiana, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

"Bar Date" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtors as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

"Bar Date Order" means the *Order Granting Motion To Set Last Day To File Proofs of Claim* [Dkt. No. 147].

"Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"Carve-Out" has the same meaning  as "Carve-Out" as defined and provided for in the *Final Order (I) Authorizing Debtors To Utilize Cash Collateral, (II) Granting Adequate Protection To Prepetition Sec Modifying The Automatic Stay, (IIII) Modifying The Automatic Stay, and (IV) Granting Related Relief* [Dkt. No 137, Paragraph 12].

 "Cash" means the legal tender of the United States of America or the equivalent thereof.

"Causes of Action" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims. The Causes of Action include, without limitation, the Causes of Action belonging to the Debtors' Estates listed on the schedule of Causes of Action to be filed with the Plan Supplement.

"CFO/CRO" means Kim E. Thayer, the Debtors' chief financial officer and chief restructuring officer.

"Chapter 11 Cases" means the Debtors' case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court styled In re Kologik, LLC, et al., Case No. 24-10311.

"Claim" means any "claim" against the Debtors as defined in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the date that is sixty (60) days after the Confirmation Date; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Plan Agent.

"Class" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

"Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"Cramdown" means the confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding any rejection by an impaired Class or Classes of Holders of Claims or Equity Interests of the Plan.

"Debtors" means ResolveKo, LLC, ResolveKo Capital, LLC, and ResolveKo Capital II, LLC (formerly operating as Kologik, LLC, Kologik Capital, LLC; and Kologik Capital II, LLC, respectively).

"Disclosure Statement" means that certain Disclosure Statement for Debtors' Chapter 11 Plan of Liquidation, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

"Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest (i) scheduled as disputed, (ii) to which the Debtors or any other party in interest with standing and capacity has filed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or (iii) that is otherwise disputed by the Debtors in accordance with applicable law.

"Dissolution" means the filing of Articles of Dissolution of the Debtors by the Plan Administrator as authorized by this Plan after the Membership Interest Extinguishment Date.

"Distribution" means the payment or distribution of consideration to Holders of Allowed Claims under this Plan.

"Distribution Date" means no later than the fifth Business Day after entry of the Final Decree, unless the Final Decree is stayed.

"Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions hereunder, which date shall be the date of entry of the Approved Allowed Claims and Distribution Schedule.

"Effective Date" means the second Business Day after entry of the Confirmation Order, unless the Confirmation Order is stayed, in which case the Effective Date shall mean the second Business Day after the stay of the Confirmation Order is terminated.

"Entity" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

"Equity Interest" means any Equity Security in the Debtors, including, without limitation, all issued, unissued, authorized or outstanding membership interests.

11

"ERC Claim" means the claim of ResolveKo, LLC to recovery of its submitted request for the employee retention credit, as well as the claim of ResolveKo concerning the employee retention credit submitted or to be submitted through ADP, the Debtors' former Professional Employer Organization.

"Estates" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases

"Exculpated Parties" means, collectively, (i) the Debtors and their successors and assigns, (ii) Paul San Soucie; (iii) the CFO/CRO, (iv) Plan Agent, and (iv) the members of the Debtors' Board of Managers, but only to the extent provided in ARTICLE VIII hereof. .

"Executory Contract" means a contract to which any Debtor(s) is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"Exhibit" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

"File" or "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"Final Decree" means the order of the Bankruptcy Court deeming the Plan substantially consummated and ordering the Chapter 11 Cases closed, which the Debtors will seek to be entered as soon as practicable after the entry of the Approved Allowed Claims and Distribution Schedule.

"Final Tax Return" means the final federal and state tax returns to be filed before, on, or after the Membership Extinguishment Date.

"Final Order" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidating Debtors, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"General Unsecured Claim" or "Unsecured Claim" means any prepetition Claim against the Debtors that is not Secured and is not a/an: (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; or (d) Priority Non-Tax Claim.

"Governmental Unit" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

"Holder" means an Entity holding a Claim against, or Equity Interest in, the Debtors.

"Impaired" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Class" means classes which are identified as impaired as set forth in ARTICLE III.

"Indemnification Claim" means a claim for indemnification, contribution, or subrogation under any applicable limited liability articles of organization or operating agreement as the same may have been amended, or any applicable non-bankruptcy law.

"Lien" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

"Membership Extinguishment Date" shall be the Residual Distribution Date.

"Person" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

"Petition Date" means April 23, 2024.

"Plan" means this Debtors' Chapter 11 Plan of Liquidation, including the Exhibits and the Plan Documents and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

"Plan Agent" means Ms. Kim E. Thayer, or in the event that she resigns or is no longer able to act as Plan Agent, a person to be appointed pursuant to ARTICLE V of this Plan.

"Plan Budget" means the post-Effective Date budget attached to the Disclosure Statement, as it may be amended.

"Plan Documents" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement (if any), to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

"Plan Expenses" mean the reasonable costs associated with the administration of the Plan, post-Effective Date, including but not limited to: the Plan Agent Compensation, Statutory Fees, any insurance premium payments, costs of document storage, service charges for bank accounts, email servers, vendor contracts, and any like expense.

"Plan Expense Reserve" means the amount of in Cash determined in the discretion of the Plan Agent to be necessary to fund all Plan Expenses through Dissolution, the estimation of which is set forth in the Plan Supplement.

"Plan Supplement" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the schedule of Retained Causes of Action; (ii) the schedule of remaining Executory Contracts and Unexpired Leases to be assumed and rejected pursuant to this Plan, (iii) the Plan Expense Reserve estimates, and the estimated post-Effective Date Professional Fee Reserve.

"Priority Non-Tax Claim" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Pro Rata" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

"Professional" means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise, (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code, or any professional retained by the Plan Agent after the Effective Date.

"Professional Fee Claim" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred in connection with the Professional's authorized representation of the Debtors, prior to and including the Effective Date.

"Professional Fee Claims Bar Date" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

"Professional Fee Claims Objection Deadline" means, with respect to any Professional Fee Claim, twenty (21) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

"Professional Fee Reserve" means the reserve established by the CFO/CRO, to be maintained and further funded as necessary by the Plan Agent, to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims and post-Effective Date fees and expenses of the Professionals retained by the Plan Agent.

"Proof of Claim" means a written proof of Claim or Equity Interest Filed against the Debtors in the Chapter 11 Cases.

"Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Rejection Claim" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

"Liquidating Debtors" means the Debtors, on and after the Effective Date.

"Remaining Amount" means the final aggregate amount of Cash remaining with the Plan Agent after the payments made on the Distribution Date, and after payment of all Professional Fee Claims and post-Effective Date Professional Fee Claims, Plan Agent fees and expenses and any other expenses related to the collection of the ERC Claims, preparation and filing of tax returns (including the Final Tax Return), and the Dissolution.

"Residual Distribution Date" means the date on which the Plan Agent shall make the Residual Distributions, which shall be no later than the later of sixty (60) days after the Distribution Date, or sixty (60) days after receipt by the Plan Agent of all funds associated with the ERC Claims, unless extended by order of the Bankruptcy Court.

"Residual Distributions" means the Distributions to Creditors of each Creditor's Pro Rata Share of the Remaining Amount.

"Sale Proceeds" means the amounts received by the Debtors from the Asset Sale after payment of expenses as set forth in the *Schedule of Sale Proceeds and Expenses* [Dkt. No. 142-1].

"Schedules" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtors with the Bankruptcy Court.

"Secured" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtors' Estates has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the interest of the Debtors' Estates in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

"Secured Claim" means a Claim that is Secured, and for which a Proof Claim asserting Secured status has been filed. A Proof of Claim asserting that the Claim is not Secured cannot be a Secured Claim; and failure to file a Proof of Claim precludes assertion of a Secured Claim.

"Security" or "security" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

"Statutory Fees" means fees payable pursuant to 28 U.S.C. § 1930.

"Unexpired Lease" means a lease to which the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"Unimpaired" means, with respect to a Class of Claims that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"Unsecured Claim" means a Claim that is not Secured, and for which a Proof of Claim has been filed.

"Voting Deadline" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtors to solicit acceptances of the Plan.

"Voting Record Date" means the day before the Voting Deadline.

## ARTICLE II.    ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

### A.    Administrative Expense Claims

An Administrative Expense Claim with respect to which notice has been properly filed and served shall become an Allowed Administrative Expense Claim if no objection is filed on or prior to the Administrative Claim Objection Deadline.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved.

**EXCEPT AS OTHERWISE PROVIDED BY A FINAL ORDER PREVIOUSLY ENTERED BY THE BANKRUPTCY COURT UNLESS PREVIOUSLY FILED, REQUESTS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, MUST BE FILED AND SERVED ON THE DEBTORS NO LATER THAN THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE.**

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE EXPENSE CLAIM BAR DATE THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTORS OR ITS RESPECTIVE PROPERTY.**

### B.    Professional Fee Claims

Professionals or other entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court

granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtors or Liquidating Debtors, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtors or Liquidating Debtors, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline. Each Holder of an Allowed Professional Fee Claim will be paid by the Debtors or the Plan Agent, as applicable, in Cash within five (5) Business Days after entry of the order approving such Allowed Professional Fee Claim.

The Plan Agent shall maintain the Professional Fee Reserve. The Professional Fee Reserve shall be maintained by the Plan Agent and held in accounts of the Debtors or Liquidating Debtors as applicable. The Plan Agent shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Plan Agent in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims as of the Effective Date. Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released by the Plan Agent to be used for other purposes consistent with the Plan as Available Cash.

**C.**     **Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. If a Priority Tax Claim becomes an Allowed Priority Tax Claim after the Effective Date and after Allowance by Final Order of the Bankruptcy Court after trial of an objection to such Claim, then such Allowed Priority Tax Claim shall be paid, in cash in full, with statutory interest under applicable non-bankruptcy law through payment of the Claim. To the extent that any such Claim exceeds the maximum amount allowed as a Priority Unsecured Claim pursuant to § 507(a), the amount of the Claim allowed as an Unsecured Claim shall be treated as a General Unsecured Claim.

**D.**     **United States Trustee Fees**

All Statutory Fees payable under 28 U.S.C. § 1930 shall be paid in Cash in full by the Debtors pending the Effective Date and thereafter shall be paid by the Liquidating Debtors or the Plan Agent until the issuance of the Final Decree. The Confirmation Order will provide that the Liquidating Debtors will be responsible for the timely payment of all statutory fees under 28 U.S.C. § 1930 relating to the Chapter 11 Cases, but that the Liquidating Debtors and the Plan Agent

reserve the right to request the Chapter 11 Cases be administratively closed after the Effective Date, pending the Final Decree.

## ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### A.    Summary of Classification and Voting Rights

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Paid Secured Claim of Riva Ridge Master Fund, Ltd. | Unimpaired | Not Entitled to Vote (Paid in full per Order of Bankruptcy Court) |
| Class 3 | Paid Secured Claim of LaFactor (as holder of Mississippi River Bank Notes) | Unimpaired | Not Entitled to Vote (Paid in full per Order of Bankruptcy Court) |
| Class 4 | Mississippi River Bank | Impaired | Not Entitled to Vote (Contingent Claim for Indemnity Disallowed under Section 502(e)) |
| Class 5 | LaFactor, LLC (as former holder of Mississippi River bank Notes) | Impaired | Not Entitled to Vote (Contingent Claim for Indemnity Disallowed under Section 502(e)) |
| Class 6 | TSB Ventures, LLC | Impaired (Impaired by Carve-Out; possible lack of collateral; claims of Liquidating Debtors) | Entitled to Vote |
| Class 7 | LaFactor, LLC | Impaired (Impaired by Carve-Out; possible lack of | Entitled to Vote |

18

| | | collateral; claims of Liquidating Debtors) | |
|---|---|---|---|
| Class 8 | Jackson Smith Thomas | Impaired (Impaired by Carve-Out; possible lack of collateral; claims) | Entitled to Vote |
| Class 9 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 10 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.**  **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**C.**  **Classes and Treatment**

**1.**  **CLASS 1 – Priority Non-Tax Claims**

**Classification**: Class 1 consists of all Priority Non-Tax Claims

**Treatment**:  On the later of the Effective Date and the date on which the Claim in Class 1 is Allowed, unless otherwise agreed by the Holder of an Allowed Claim in Class 1 and the Debtors or the Plan Agent, each holder of an Allowed Claim in Class 1 shall receive Cash on the Effective Date an amount equal to such Allowed Priority Non-Tax Claim.

**Voting**:  Class 1 is Unimpaired under the Plan. Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

**2.**  **CLASS 2 – Paid Secured Claim of Riva Ridge Master Fund, Ltd.**

**Classification**: Class 2 consists of the Paid Secured Claim of Riva Ridge Master Fund, Ltd.

**Treatment**:  The Class 2 Claim, including principal, interest, fees and costs has been paid from Sale Proceeds in accordance with Orders of the Bankruptcy Court in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 2 Claim.

**Voting**:  Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.      **CLASS 3 – Paid Secured Claim of LaFactor (as holder of Mississippi River Bank Notes)**

**Classification**: Class 3 consists of the Paid Secured Claim of LaFactor (as holder of Mississippi River Bank Notes).

**Treatment**:  The Class 3 Claim, including principal, interest, fees and costs has been paid from Sale Proceeds in accordance with Orders of the Bankruptcy Court, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 3 Claim.

**Voting**:  Class 3 is Unimpaired under the Plan. Holders of Claims in Class 3 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.      **CLASS 4 –Mississippi River Bank Contingent Claim for Indemnity**

**Classification**: Class 4 consists of the Mississippi River Bank Contingent Claim for Indemnity.

**Treatment**:  The Debtors consider the Class 4 Claim to be not Allowed as a matter of law, under Section 502(e) of the Bankruptcy Code.  As well, the Class 4 Claim is duplicative of the Class 5 Claim, which is the Claim of LaFactor, LLC for indemnity under the same notes and loan agreements as claimed by the Holders of the Class 4 Claim.  In the event the Bankruptcy Court determines by Final Order that the Class 4 Claim is non-duplicative and non-contingent, and Allows the Class 4 Secured Claim, and that such Claim is in priority over Claims in other Classes, then, subject to the Carve-Out and the Plan Expense Reserve and Professional Fee Reserve, the Liquidating Debtors shall pay Holders of the Class 4 Claim in cash and in full on the Distribution Date, or, if there is insufficient Cash thereupon, on the Residual Distribution Date, to the extent the Remaining Amount is sufficient, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 4 Claim.  The Class 4 Claim shall not be paid in priority over any Secured Claim that under applicable law is a Claim with priority Secured status.

**Voting**:  Class 4 is Impaired under the Plan. Holders of Claims in Class 4, being Disputed, are not entitled to vote to accept or reject the Plan unless the Class 4 Claim is Allowed or obtains an Order of the Bankruptcy Court estimating this Claim under Section 502(c) or for voting purposes, by the Voting Record Date.

20

5.      **CLASS 5 –LaFactor, LLC Contingent Claim for Indemnity**

**Classification**: Class 5 consists of the LaFactor, LLC Contingent Claim for Indemnity.

**Treatment**:  The Debtors consider the Class 5 Claim to be not Allowed as a matter of law, under Section 502(e) of the Bankruptcy Code.  As well, the Class 5 Claim is duplicative of the Class 4 Claim, which is the Claim of Mississippi River Bank for indemnity under the same notes and loan agreements as claimed by the Holder of the Class 5 Claim.  In the Event the Bankruptcy Court determines by Final Order that the Class 5 Claim is non-duplicative and non-contingent, and Allows the Class 5 Secured Claim, and that such Claim is in priority over Claims in other Classes, then, subject to the Carve-Out and the Plan Expense Reserve and Professional Fee Reserve, the Liquidating Debtors shall pay Holders of the Class 5 Claim in cash and in full on the Distribution Date, or, if there is insufficient Cash thereupon, on the Residual Distribution Date, to the extent the Remaining Amount is sufficient, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 5 Claim.  The Class 5 Claim shall not be paid in priority over any Secured Claim that under applicable law is a Claim with priority Secured status.

**Voting**:  Class 5 is Impaired under the Plan. The Holders of Claims in Class 5, being Disputed, are not entitled to vote to accept or reject the Plan unless the Class 5 Claim is Allowed or the Holder obtains an Order of the Bankruptcy Court estimating this Claim under Section 502(c) or for voting purposes, by the Voting Record Date.

6.      **CLASS 6 –Secured Claim of TSB Ventures, LLC**

**Classification**: Class 6 consists of the TSB Ventures, LLC Secured Claim.

**Treatment**:  The Class 6 Claim is a Disputed Claim.  In the event the Bankruptcy Court by Final Order Allows the Class 6 Secured Claim, and rules that such Claim is in priority over Claims in other Classes, then, subject to the Carve-Out and the Plan Expense Reserve and Professional Fee Reserve, the Liquidating Debtors shall pay Holders of the Class 6 Claim in cash and in full on the Distribution Date, or, if there is insufficient Cash thereupon, on the Residual Distribution Date, to the extent the Remaining Amount is sufficient, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 6 Claim.  The Class 6 Claim shall not be paid in priority over any Secured Claim that under applicable law is a Claim with priority Secured status.

**Voting**:  Class 6 is Impaired under the Plan. Holders of Claims in Class 6, being Disputed, are not entitled to vote to accept or reject the Plan unless the Class 6 Claim is Allowed or obtains an Order of the Bankruptcy Court estimating this Claim under Section 502(c) or for voting purposes by the Voting Record Date.

7.      **CLASS 7 –Secured Claim of LaFactor, LLC**

**Classification**: Class 7 consists of the LaFactor, LLC Secured Claim.

**Treatment**: The Class 7 Claim is a Disputed Claim. In the event the Bankruptcy Court by Final Order Allows the Class 7 Secured Claim, and rules that such Claim is in priority over Claims in other Classes, then, subject to the Carve-Out and the Plan Expense Reserve and Professional Fee Reserve, the Liquidating Debtors shall pay Holders of the Class 7 Claim in cash and in full on the Distribution Date, or, if there is insufficient Cash thereupon, on the Residual Distribution Date, to the extent the Remaining Amount is sufficient, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 7 Claim. The Class 7 Claim shall not be paid in priority over any Secured Claim that under applicable law is a Claim with priority Secured status.

**Voting**: Class 7 is Impaired under the Plan. Holders of Claims in Class 7, being Disputed, are not entitled to vote to accept or reject the Plan unless the Class 7 Claim is Allowed or obtains an Order of the Bankruptcy Court estimating this Claim under Section 502(c) or for voting purposes by the Voting Record Date.

## 8.    CLASS 8 –Secured Claim of Jackson Smith Thomas

**Classification**: Class 8 consists of the Jackson Smith Thomas Secured Claim.

**Treatment**: The Class 8 Claim is a Disputed Claim. In the event the Bankruptcy Court by Final Order Allows the Class 8 Secured Claim, and rules that such Claim is in priority over Claims in other Classes, then, subject to the Carve-Out and the Plan Expense Reserve and Professional Fee Reserve, the Liquidating Debtors shall pay Holders of the Class 8 Claim in cash and in full on the Distribution Date, or, if there is insufficient Cash thereupon, on the Residual Distribution Date, to the extent the Remaining Amount is sufficient, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 8 Claim. The Class 8 Claim shall not be paid in priority over any Secured Claim that under applicable law is a Claim with priority Secured status.

**Voting**: Class 8 is Impaired under the Plan. Holders of Claims in Class 8, being Disputed, are not entitled to vote to accept or reject the Plan unless the Class 8 Claim is Allowed or obtains an Order of the Bankruptcy Court estimating this Claim under Section 502(c) or for voting purposes by the Voting Record Date.

## 9.    CLASS 9 –General Unsecured Claims

**Classification**: Class 9 consists of the General Unsecured Claims.

**Treatment**: Subject to the Carve-Out and the Plan Expense Reserve and Professional Fee Reserve, the Liquidating Debtors shall pay Holders of Allowed Class 9 Claims in cash a Pro Rata share of the Available Cash on the Distribution Date, and a Pro Rata Share of the Remaining Amount on the Residual Distribution Date, in full and final satisfaction, settlement, release, and compromise of and in

exchange for each Allowed Class 9 Claim but no Class 9 Claim shall be paid in priority over any Allowed Claim in a senior Class.

**Voting**:  Class 9 is Impaired under the Plan. Any Holder of a Claim in Class 9 that is Disputed is not entitled to vote to accept or reject the Plan unless such Holder's Claim is Allowed or the Holder obtains an Order of the Bankruptcy Court estimating this Claim under Section 502(c) or for voting purposes by the Voting Record Date.

**10.     CLASS 10 –Membership/Equity Interests**

**Classification**: Class 10 consists of the Membership/Equity Interests in the Debtor ResolveKo, LLC (this Debtor is the Holder of the Equity Interests in the other two Debtors, and as the Liquidating Debtor ResolveKo, LLC shall be managed by the Plan Agent, no provision need be made for ResolveKo, LLC in such capacity).

**Treatment**:  The Holders of Class 10 Membership/Equity Interests shall receive no value under the Plan.  The Membership/Equity Interests shall be extinguished on the Membership Extinguishment Date.   Pending the Membership Extinguishment Date neither the Holders of Class 10 Interests nor the pre-Effective Date Board of managers shall have any voting power or control, as the Plan Agent shall hold all voting power and control over the Liquidating Debtors and shall be the Entity representative of the Liquidating Debtors with full corporate authority to act.

**Voting**:  Class 10 is Impaired under the Plan. Holders of Interests in Class 10 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**D.     Controversies Regarding Impairment.**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.     ACCEPTANCE OR REJECTION OF THE PLAN**

**A.     Voting Classes**

The voting Classes are as set forth and described immediately above in ARTICLE III of this Plan and are Classes 6, 7, 8, and 9.

**B.     Voting Rights as to Confirmation of the Plan, Procedural Requirements**

If a Claim is a Disputed Claim and the Holder seeks to obtain the right to vote such Claim, the Holder must seek Allowance an Order of the Bankruptcy Court estimating such Claim under Section 502(c) or for voting purposes, upon at least fifteen (15) days' notice to the Debtors and

affected parties in interest, so that the Bankruptcy Court can hold a hearing on such request prior to the Voting Record Date.

**C.    Acceptance by Impaired Classes**

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**D.    Non-Consensual Confirmation**

The Debtors reserve the right to seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code, to the extent applicable, in the event of a rejection by any of the Voting Class.  The Plan Proponents intend to request that the Bankruptcy Court confirms this Plan by Cramdown with respect to any such Class or Classes, in which case this Plan shall constitute a motion for such relief.

## ARTICLE V.    MEANS FOR IMPLEMENTATION OF THIS PLAN

**A.    Summary**

The Plan will liquidate and distribute the Debtors' Assets by using the Sale Proceeds and other Assets of the Debtors to fund the administration of the Plan and the Distributions and Residual Distributions (if any).  The Plan Agent will liquidate Assets not reduced to Cash as of the Effective Date, and in accordance with this Plan shall make Distributions on the Distribution Date, and further, if Remaining Amounts become available, the Residual Distributions on the Residual Distribution Date. to be distributed in accordance with the Plan.  Because of the number of Disputed and contingent Claims, it is not practicable to establish disputed claims reserves. Therefore the Debtors and Liquidating Debtors shall proceed expeditiously to effect the occurrence of the Distribution Date, which is conditioned upon the entry of the Approved Allowed Claims and Distribution Schedule (which, as defined, requires that Claims be finally Allowed).  The projected proceedings prior to the Confirmation Hearing (the filing of objections to Claims and the seeking of a Bankruptcy Court directed mediation process) and the structure of the Plan (obtaining entry of the (i) Approved Allowed Claims and Distribution Schedule and (ii) Final Decree, prior to the Distribution Date) is designed to provide the most efficient, cost effective and expeditious means of effectuating distribution of the Assets of the Debtors and Liquidating Debtors to their Creditors.  Because timing of the receipt of the proceeds of the ERC Claim cannot be projected with any degree of certainty, the Plan provides for the prospect of a Residual Distribution of the Remaining Amount, presumably later in time than the Distribution Date, but the Distribution Date is designed to make certain that regardless of collection of the Remaining Amount, the bulk of the Liquidating Debtors' Cash can be distributed immediately upon finalization of the Allowed Claims and approval of the schedule thereof.  **As of the Effective Date and because the Equity Interests are to be extinguished, the Plan Agent shall have sole authority to act for the Liquidating Debtors, and neither the Board of managers nor the Holders of Equity Interests**

**shall have voting power or control, pending the Membership Extinguishment Date and the Dissolution.**

**B.**  **Vesting of Estate Property in the Liquidating Debtors.**

On the Effective Date, all property of the Debtors and of the Estates including all rights to object to Claims, all Avoidance Actions, Causes of Action, claims and causes of action identified in the Schedule of Retained Causes of Action to be filed with the Plan Supplement, alter-ego rights, derivative claims, breach of fiduciary duty claims, veil piercing rights, the right to pursue such claims and all other remaining property of the Estates as defined in section 541 of the Bankruptcy Code, including all Cash held and/or controlled by the Debtors on the Effective Date, equipment and other tangible and intangible property, shall be fully retained and vest in the Liquidating Debtors, free and clear of all liens, claims and encumbrances, except as otherwise provided in the Plan.

The Plan Agent shall be the sole officer, manager and representative of the Liquidating Debtors, with sole and full capacity to act for and on behalf of the Liquidating Debtors, pending Dissolution.

**C.**  **Continuation of Limited Operations and Ultimate Dissolution of the Liquidating Debtors.**

From and after the Effective Date of the Plan, subject to the limitations set forth below, the Liquidating Debtors, through the Plan Agent, are authorized to take such actions as are necessary to complete an orderly wind-down of the operations of the Liquidating Debtors, including (i) preparation of tax returns and completing any audits by the IRS or other taxing authorities; (ii) filing of claim objections; (iii) making Distributions; (iv) prosecuting Causes of Action owned by the Estate, including all claims and causes of action arising under the Bankruptcy Code; (v) pursuing, liquidating and administering property of the Estate; (vi) preparing and filing tax returns; Making the Residual Distributions; and (vii) taking such other action as provided for under the Plan. After issuance of the Final Decree, and the making of all Distributions and Residual Distributions, the Liquidating Debtors shall be deemed to have satisfied all liabilities for purposes of dissolution under applicable state law. The Plan Agent is expressly and specifically authorized to execute and file all documents necessary to effectuate the dissolution of the Liquidating Debtors under applicable non-bankruptcy law as of the Membership Extinguishment Date.

**D.**  **General Powers of the Plan Agent.**

The Plan Agent, on behalf of the Liquidating Debtors, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order or applicable bankruptcy or non-bankruptcy law. The Plan Agent is authorized and shall have the obligation to take all such actions as in her business judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

- Make all Distributions and Residual Distributions;

- Consistent with maintaining the value and liquidating the Assets of the Liquidating Debtors, invest in time or demand deposits, including certificates of deposit or like

investments, including United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof, issued and to be held by any bank approved as a depository institution by the United States Trustee's office;

- Supervise and administer the resolution, settlement and payment of Claims and Interests and the distributions to the holders of Allowed Claims in accordance with this Plan;

- Enter into any agreement required by or consistent with the Plan and perform all of the Liquidating Debtors' obligations thereunder;

- Abandon any of the Assets of the Liquidating Debtors if the Plan Agent concludes that such assets are of no benefit to the Creditors, upon notice and opportunity for hearing;

- Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Liquidating Debtors, including without limitation all Avoidance Actions and all state and federal Causes of Action or any other litigation which constitute an Asset of the Liquidating Debtors, and pursue to settlement or judgment such actions;

- Participate as a party-in-interest in any proceeding before the Bankruptcy Court involving the Chapter 11 Cases;

- Act in the name of or in the place of the Liquidating Debtors in any action before the Bankruptcy Court or any other judicial or administrative body;

- Take actions and exercise remedies against any entity that owes money to the Liquidating Debtors, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

- Select and employ such professionals, agents or employees as the Plan Agent deems necessary to assist in the administration of the affairs of the Liquidating Debtors and compensate such persons;

- Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with this Plan;

- Propose any amendment, modification or supplement to this Plan or the Liquidating Debtors' corporate governance documents;

- File dissolution documents with the appropriate governmental agencies to dissolve the Liquidating Debtors as of the Membership Extinguishment Date;

- Receive, conserve and manage the assets of the Liquidating Debtors and sell pursuant to section 363(f) of the Bankruptcy Code or otherwise dispose of such assets for a price and upon such terms and conditions as the Plan Agent deems most beneficial to the Holders of Claims and Interest Holders and execute such deeds, bills of sale,  assignments and other instruments in connection therewith;

- Open and maintain bank accounts on behalf of or in the name of the Liquidating Debtors;

- Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Debtors;

- Pay all lawful expenses, debts, charges and liabilities of the Liquidating Debtors;

- Enforce all provisions of this Plan;

- Protect, perfect and defend the title to any of the assets of the Liquidating Debtors and enforce any bonds, mortgages or other obligations or Liens owned by the Liquidating Debtors;

- Carry insurance coverage, including insurance to protect former officers and directors and the Plan Agent against claims brought against them;

- Establish the Plan Expense Reserve and maintain the Professional Fee Reserve;

- Oversee the preparation of any year end and the short year final tax returns; and

- Exercise such other powers and duties as are necessary or appropriate in the Plan Agent's discretion to accomplish the purposes of this Plan, and to take any and all actions and exercise any and all authority set forth within this Plan, whether or not mentioned specifically in this Subsection.

**E.**      **Resignation/Removal of the Plan Agent.**

The Plan Agent may resign at any time by filing a written notice of resignation with the Bankruptcy Court. Any such resignation shall not become effective prior to sixty (60) days after the filing date of such notice unless the Plan Agent finds an acceptable replacement, and such replacement has been approved by Order of the Bankruptcy Court (after the reopening of the Bankruptcy Cases as necessary).

**F.**      **Appointment of Successor Plan Agent.**

In the event of the death of the Plan Agent, the counsel for the Liquidating Debtors are authorized to propose to the Bankruptcy Court a successor Plan Agent, and after notice and a hearing (upon reopening the Bankruptcy Cases), the Bankruptcy Court shall determine whether to

approve the successor Plan Agent, or any other proposed Plan Agent submitted by the Liquidating Debtors' counsel.  If no successor Plan Agent is approved (either upon submission by the Plan Agent proposing a replacement, or by counsel for the Liquidating Debtors in the event of death of the Plan Agent), Liquidating Debtors' counsel is authorized to seek conversion of the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code, or the Bankruptcy Court may convert the bankruptcy Cases to cases under Chapter 7 *sua sponte*.

**G.    Plan Agent Compensation**

The Plan Agent and all professionals employed by the Plan Agent shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis, without Bankruptcy Court approval, pursuant to the terms of their respective employment.  The Plan Agent shall be paid salary of $25,000 per month, plus an amount equal to applicable self-employment and Medicare tax burden, and out of pocket expenses.

**H.    Plan Expense Reserve**

The Plan Agent shall fund the Plan Expense Reserve on the Effective Date in an amount determined by the Plan Agent in accordance with the Plan Budget for the payment of the Plan Expenses.  The Plan Agent is authorized to provide additional funding of the Plan Expense Reserve post-Effective Date in her reasonable discretion.

The Plan Agent may make any disbursement from the Plan Expense Reserve pursuant to the terms of this Plan without further order of the Bankruptcy Court or notice to any party.  At such time as the Plan Agent determines, in her sole discretion, that the Plan Expense Reserve is no longer needed, upon the filing of her certification, the Cash set aside for the Plan Expense Reserve shall become Available Cash and disbursed according to the Plan.

**I.    Plan Funding**

The Distributions and Residual Distributions shall be funded with Available Cash and the proceeds from liquidation of any remaining Assets of the Liquidating Debtors.

**J.    Vesting of Assets and Causes of Action**

After the Effective Date, all of the property and assets of the Debtors and their Estates under section 541(a) of the Bankruptcy Code shall vest in the Liquidating Debtors.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Liquidating Debtors shall retain any and all Causes of Action, including, but not limited to those Causes of Action listed on the Retained Causes of Action submitted with the Plan Supplement, as may be amended prior to confirmation, whether arising before or after the Petition Date, and such Causes of Action are preserved and shall vest in the Liquidating Debtors as of the Effective Date. The Plan Agent shall determine whether to bring, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The Plan Agent may pursue such litigation claims in accordance with the best interests of the Liquidating Debtors. No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action

against them as any indication that the Plan Agent and/or Liquidating Debtors will not pursue any and all available Causes of Action against them. The Reorganized Debtor and the Plan Agent expressly reserve all rights to prosecute any and all Causes of Action against any Entity that constitutes property of the Estate, except as otherwise provided in this Plan. **THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THE PLAN, THE SCHEDULES, OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE PLAN AGENT**

**TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RIGHTS, CLAIMS, CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTORS HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE.**

**K.**     **Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

**1.**     **Delivery of Distributions in General**

Except as otherwise provided herein, the Plan Agent shall make the Distributions and Residual Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on (i) the records of the Liquidating Debtors (as scheduled in the Schedules or through any subsequent correspondence advising of an address change), or (ii) the applicable Proof of Claim if such has a different address. If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

**2.**     **Undeliverable Distributions and Unclaimed Property**

In the event that any Distribution or Residual Distribution to any Holder is returned as undeliverable, no Distribution or Residual Distribution to such Holder shall be made unless and until the Plan Agent has determined the then current address of such Holder, at which time such Distribution or Residual Distribution shall be made to such Holder without interest; provided, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Debtors automatically and without need for a further order by the Bankruptcy Court, and (i) the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred, and (ii) the Plan Agent is authorized to treat any such amount as part of the Remaining Amount for purposes of Residual Distribution to the other Holders of Allowed Claims.

**3.**     **Manner of Payment Pursuant to the Plan**

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Plan Agent, by check or by wire transfer, at the sole and exclusive discretion of the Plan Agent.

4. **Compliance with Tax Requirements/Allocations**

To the extent applicable, the Plan Agent shall request distributees to provide appropriate documentation that may be required for an exemption from withholding or reporting, and shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements unless an exception applies. Notwithstanding any provision in the Plan to the contrary, the Plan Agent, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions spending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms she believes is reasonable and appropriate. The Plan Agent reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Distributions in respect of Allowed Claims shall be allocated (i) first to interest and fees, with respect to those Allowed Claims that are fully Secured, and (ii) first to the principal balance if the amount to be paid is insufficient to pay the full principal balance plus applicable interest, fees and costs under such Claim.

## ARTICLE VI.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. **Assumption and Rejection**

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (1) those that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement; (2) those that have been previously assumed, assumed and assigned, or rejected by a Final Order; (3) those that are the subject of a motion (a) to assume, (b) to assume and assign, or (c) reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (4) those that are subject to a motion to assume, assume and assign, or reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such assumption, assumption and assignment, or rejection is after the Effective Date; (5) those Executory Contracts and Unexpired Leases that expired pursuant to the terms thereof before the Petition Date; or (6) is otherwise assumed pursuant to the terms herein.

Entry of the Confirmation Order shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as provided under the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Court on or after the Effective Date. Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner

affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**FOR THE AVOIDANCE OF DOUBT, NO INDEMNITY AGREEMENT OR INDEMNIFICATION OBLIGATION UNDER ANY CONTRACT, LOAN AGREEMENT, OPERATING AGREEMENT, ARTICLES OF ORGANIZATION, OR APPLICABLE LAW SHALL BE ASSUMED UNDER, BY OR THROUGH THIS PLAN.**

**B.    Rejection Claim**

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estate or property of the foregoing, without the need for any objection by the Debtors or the Plan Agent and without the need for any further notice to, or action, order, or approval of the Court. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims (Class 9) and shall be treated in accordance with Article III of this Plan, as applicable. Notwithstanding anything to the contrary herein, prior to the Effective Date, the Debtors may amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease.

**C.    Cure of Assumed Executory Contracts and Unexpired Leases**

Any monetary defaults under an Executory Contract and Unexpired Lease, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the Cure Amount or (2) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

With respect to each of the Executory Contracts or Unexpired Leases assumed hereunder, the Debtors shall designate a proposed Cure Amount, and the assumption of such Executory Contract or Unexpired Lease shall be conditioned upon the disposition of all issues with respect to Cure. Except as otherwise set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement, the Cure Amount with respect to each of the Executory Contracts or Unexpired Leases assumed hereunder is designated by the Debtors as $0, subject to the determination of a different Cure Amount pursuant to the procedures set forth herein and in the Cure Notices. Except with respect to Executory Contracts and Unexpired Leases for which the

Cure is $0, the Cure shall be satisfied by the Plan Agent's payment of the Cure in Cash on the later of (i) thirty (30) days following the occurrence of the Effective Date or as soon as reasonably practicable thereafter; or (ii) for any Cure Amounts subject to dispute, thirty (30) days after the underlying Cure dispute is resolved, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assumes such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory

**D.    Insurance Policies.**

All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts assumed under the Plan. Post-Petition Date insurance policies shall be, to fullest extent possible, assumed by the Debtors and shall not be deemed rejected by entry of the Confirmation Order.

**E.    Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan or Purchase Agreement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors has any liability thereunder.

## ARTICLE VII.    PURSUIT OF CLAIM OBJECTIONS AND CAUSES OF ACTION

**A.    Objection Process**

The Debtors shall have the right to object to the allowance of any Claims or Equity Interests provided for under the Plan, and have determined to use reasonably best efforts to File objections to Claims by August 30, 2024.  Not Filing by this date shall not be a waiver of the right to File objections later in time.  After the occurrence of the Effective Date, the Plan Agent on behalf of the Liquidating Debtors shall have the sole right to object to the allowance of any Claims or Equity Interests provided for under the Plan, unless some other Entity can establish standing to do so.  The Plan Agent shall be deemed substituted as the party-in-interest for all Claim objections pending as of the Effective Date without further motion of the Debtors or Plan Agent.

After the Effective Date, the Plan Agent shall also have the authority to compromise, settle or otherwise resolve Claim objections regarding any Claim filed in the amount of $50,000 or less, or to settle a Claim objection to a Claim filed in excess of $50,000, by reducing the Claim for purposes of Allowance to no greater than $50,000, without approval of the Bankruptcy Court or notice to Creditors.  For all settlements in excess of $50,000, the Plan Agent shall file a notice with the Bankruptcy Court of any proposed settlement or resolution of a filed claim objection. If no

party in interest files an objection to the proposed settlement/resolution within ten (10) days of the date of such notice, the proposed settlement/resolution shall be deemed approved and the Plan Agent may settle such Claim without approval of any other person or entity. If a party in interest files an objection to any proposed settlement, the Plan Agent shall either (i) withdraw the settlement; or (ii) bring the matter before the Bankruptcy Court for final resolution after notice and hearing. Unless otherwise  ordered  by the Bankruptcy Court, the Plan Agent shall file and serve all objections to Claims and Equity Interests no later than (i) 60 days after the later of (a) the Effective Date; or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

**B.**    **Filing of Claims and Causes of Action by Liquidating Debtors.**

The Plan Agent shall have the exclusive right to file and prosecute any Claims and Causes of Action on behalf of the Liquidating Debtors, including all Avoidance Actions and derivative Causes of Action, on and after the Effective Date. The Plan Agent shall have the authority to compromise, settle or otherwise resolve all Claims and Causes of Action filed or asserted in the amount of $50,000 or less without approval of the Bankruptcy Court or notice to the Creditors. For all Claims and Causes of Action in excess of $50,000, regardless of the amount and terms of settlement, the Plan Agent shall file a notice of any proposed settlement with the Bankruptcy Court. If no objection is served on the Plan Agent within 10 days of the date of such  notice, the proposed settlement shall be deemed approved and the Plan Agent may settle such Claim or Cause of Action without approval of any other person or entity. If a party in interest objects to any proposed settlement, the Plan Agent shall either (i) withdraw the settlement; or (ii) bring the matter before the Bankruptcy Court for final resolution after notice and hearing.

**C.**    **Disallowance of Late Filed Proofs of Claim.**

Any Proof of Claim filed after the Bar Date is and shall be disallowed without the necessity of objection, unless the late Filed Claim asserts a lack of notice in time to File a timely Claim.

### ARTICLE VIII.  EFFECT OF CONFIRMATION

**A.**    **Legally Binding Effect.**

The provisions of this Plan shall bind all Holders of Claims or Equity Interests, whether or not they accept this Plan. On and after the Effective Date, all Holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtors, the Liquidating Debtors or their assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or  any other type of successor liability.

**B.**    **Plan Injunction.**

The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Dissolution, of all pending legal proceedings, if any, against the Debtors, the Liquidating Debtors, and their assets and properties and any proceedings not yet instituted against the Debtors

or its assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after Dissolution from: (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, or their property, the Liquidating Debtors or the Plan Agent, with respect to any such Claim or claim; (b) commencing or continuing in any manner any action or other proceeding of any kind against the Holders of Equity Interests arising out of, on the basis of, or in any way related to the Dissolution; (c) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property or the Liquidating Debtors or the Plan Agent; (d) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, or the Liquidating Debtors or the Plan Agent, with respect to such Claim; (e) asserting any right of subrogation of any kind against any obligation due the Debtors, or the Liquidating Debtors or the Plan Agent, with respect to such Claim; and (f) asserting any right of setoff or recoupment against the Debtors, or the Liquidating Debtors or the Plan Agent except  as specifically permitted by section 553 of the Bankruptcy Code and the terms of this Plan.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to section 105, if any, or section 362 of  the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

**C.      Limited Protection of the Exculpated Parties**

No Exculpated Party shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the settlement of Claims or renegotiation of Executory Contracts or Unexpired Leases, the negotiation of the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement, or document created or entered into in connection with the Disclosure Statement or the Plan (including any attachments or exhibits to any of the foregoing), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration, consummation, and implementation of the Plan, the distribution of property under the Plan, or any transaction contemplated by the Plan or the Disclosure Statement, or in furtherance thereof, except for gross negligence or willful misconduct, but in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  In any action, suit or proceeding by any Person contesting any action by, or non-action of any Exculpated Party as constituting willful misconduct, gross negligence, or ultra vires activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and  as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with applicable law with regard to the restructuring of Claims and Equity Interests in the Chapter 11 Cases.

**D.    Indemnification.**

The Liquidating Debtors shall indemnify each Person identified as an Exculpated Party against any and all costs and expenses (including attorneys' fees) incurred by any of them in defending against post-Effective Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities relating to the Debtors, the Liquidating Debtors or this Plan; provided, however, that no Exculpated Party shall be entitled to indemnification under this Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that such Exculpated Party was grossly negligent or acted fraudulently or with willful misconduct in performing such Exculpated Person's duties hereunder or under any Final Order of the Bankruptcy Court or applicable law, or ultra vires activity. Any Exculpated Party entitled to indemnification under this section shall have a priority distribution right that is senior to the Holders of Allowed Claims against the Liquidating Debtors, and such rights shall be deemed Plan Expenses and provided for in the Plan Expense Reserve. The Plan Agent may use the Liquidating Debtors' Assets to purchase indemnification insurance to satisfy any potential indemnification claims that may arise under this section (as a Plan Expense). Access to the Debtors' or Liquidating Debtors' insurance coverage, including D&O insurance, shall constitute indemnification hereunder to the extent of the limits of any policy, and any Exculpated Party having access to such insurance coverage shall exhaust such coverage before the Debtors or the Liquidating Debtors shall increase the Plan Expense Reserve.

**E.    Preservation and Retention of Claims and Rights.**

Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

## ARTICLE IX.    MODIFICATIONS AND AMENDMENTS

The Debtors reserve the right to alter, amend, or modify this Plan or any exhibits hereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, and related documents and agreements, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Equity Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved

pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date or the Effective Date and to file subsequent plans under chapter 11 of the Bankruptcy Code. If the Debtors revoke or withdraw the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity; provided, that such revocation or withdrawal shall not in any way limit, prejudice or affect the ability of the Debtor to consummate a sale transaction pursuant to section 363 of the Bankruptcy Code after revocation or withdrawal of the Plan.

## ARTICLE X.     RETENTION OF JURISDICTION

Under 28 U.S.C. §§157(b) and 1334, and sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things and without limitation, jurisdiction to:

a) Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or Secured or Unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

b) Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

c) Effectuate performance of and payments under the provisions of this Plan;

d) Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of this Plan, and matters concerning state, local and federal taxes according to Sections 346, 505 and 1146 of the Bankruptcy Code;

e) Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan or Confirmation Order and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

f)  Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan or the Confirmation Order;

g)  Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

h)  Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

i)  Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

j)  Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release;

k)  Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Bankruptcy Cases;

l)  Recover all assets of the Debtors, wherever located;

m)  Hear and determine matters concerning state, local, and federal taxes in accordance with section 346, 505, and 1146 of the Bankruptcy Code;

n)  Enforce all orders previously entered by the Bankruptcy Court;

o)  Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

p)  Determine and issue the Approved Allowed Claims and Distribution Schedule.

q)  Enter a final decree closing the Bankruptcy Case; and

r)  Interpret and enforce the terms of any settlement and compromise set forth within the Plan or approved by Final Order of the Bankruptcy Court to ensure compliance with the Confirmation Order which shall be a Final Order of the Bankruptcy Court directing through the approval of compromises contained within the Plan and previously approved by the Bankruptcy Court that the parties to such compromises have resolved that all disputes arising there under are reserved for decision in the Bankruptcy Court.

## ARTICLE XI.  SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.  Settlement, Compromise, and Release of Claims and Interests.**

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions under the Plan and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Equity Interest has accepted the Plan. Any default by the Debtors with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Equity Interests subject to the Effective Date occurring.

**B.**    **Release of Liens.**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to or in connection with the Plan, on the Effective Date and concurrently with the applicable Distribution made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Liquidating Debtors.

**C.**    **Setoffs.**

Except as otherwise expressly provided for in the Plan, the Debtors or the Plan Agent, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the Distribution to  be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtors may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to the Plan or otherwise); provided, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors of any such claims, rights,

and Causes of Action that the Debtors may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor, unless such Holder has timely Filed a Proof of Claim with and has obtained a Final Order from the Bankruptcy Court preserving such setoff.

**D.    Recoupment.**

In no event shall any Holder of Claims or Equity Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors, unless such Holder actually has timely Filed a Proof of Claim with the Bankruptcy Court preserving such recoupment.

**E.    Document Retention.**

On and after the Effective Date, the Liquidating Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Plan Agent.  After the Dissolution the Plan agent shall have no further obligation to retain documents of the Liquidating Debtors.

**F.    Reimbursement or Contribution.**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE XII.   CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**A.    Conditions Precedent to Confirmation.**

The following shall constitute conditions precedent to Confirmation of this Plan:

1. The Bankruptcy Court shall have entered an Order approving the Disclosure Statement; and

2. The Confirmation Order shall be acceptable to the Debtors and otherwise be consistent with the terms and conditions described in this Plan.

**B.    Conditions Precedent to the Effective Date.**

The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent (or conditions contemporaneous or subsequent with respect to actions which are to be taken contemporaneously with or immediately after the occurrence of the Effective Date), any of which may be waived in writing by the Plan Agent:

1. The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been stayed.

**C.**    **Waiver of Conditions.**

The preceding condition may be waived by written notice of the Plan Agent for cause.

**D.**    **Filing Notice of Effective Date.**

Within three (3) days of the occurrence of the Effective Date, the Liquidating Debtors and/or Plan Agent shall file a joint notice of occurrence of the Effective Date in the record of the Chapter 11 Cases reflecting (i) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived, (ii) specifying the date of the Effective Date, and (iii) acknowledging that the Effective Date has occurred on and as of said date.

## ARTICLE XIII.  MISCELLANEOUS PROVISIONS

**A.**    **Immediate Binding Effect**

Subject to Article XII of this Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, their Estates, and any and all Holders of Claims or Equity Interests (irrespective of whether the Holders of such Claims or Equity Interests accepted or rejected the Plan), all entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**B.**    **Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.**    **Successors and Assigns**

The rights, benefits, and obligations of any Person named or referred to in the Plan or Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**D.    Notices**

Any pleading, notice, request, demand or any other document required or permitted to be made or provided to or upon the Debtors or the Plan Agent under this Plan, in order to be effective, must be in writing (including by facsimile or electronic mail transmission) to:

| Plan Agent | Kim E. Thayer<br>c/o KELLY HART PITRE<br>One American Place<br>301 Main Street, Suite 1600<br>Baton Rouge, LA 70801-1916<br>Attn: Louis M. Phillips and Kim E. Thayer<br>Email:  louis.phillips@kellyhart.com<br>Email  kthayer@resolveko.com |
|---|---|
| **Counsel for Plan Agent and Liquidating Debtors** | KELLY HART PITRE<br>One American Place<br>301 Main Street, Suite 1600<br>Baton Rouge, LA 70801-1916<br>Attn: Louis M. Phillips<br>Email: louis.phillips@kellyhart.com |

**E.    Post-Confirmation Reporting Requirements.**

After Confirmation, the Liquidating Debtors shall continue to report to the United States Trustee on or before the twentieth (20th) day of each calendar month following the end of the calendar quarter, up to the date an order is entered granting Final Decree, converting the case to chapter 7 or dismissing the case.    However, nothing herein shall be construed as a waiver of the right of the Liquidating Debtors to request that, after the Effective Date, the Chapter 11 Case be administratively closed.

**F.    Reservation of Rights**

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors with respect to the Plan or any other restructuring document shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or with respect to the Holders of Claims or Interests before the Effective Date.

**G.    Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall

be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana, without giving effect to the principles of conflict of laws thereof.

**H.**   **Continuing Viability of Other Orders/Agreements**

Except to the extent expressly modified or otherwise provided by this Plan, or as otherwise ordered by the Bankruptcy Court (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between creditors or between the Debtors and the creditors will continue in full force and effect.

**I.**   **Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors and Plan Agent's counsel at the address above or by downloading such exhibits and documents from the following internet address: **https://www.kellyhart.com/pleadings/pleadings.html**.

**J.**   **Compliance with Tax Requirements.**

The Debtors, the Liquidating Debtors and the Plan Agent will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**K.**   **Further Assurances.**

The Liquidating Debtors and all Holders of Claims receiving Distributions or Residual Distributions under this Plan and all other parties in interest shall, from time to time, upon the request or demand of the Plan Agent, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be reasonably necessary to effectuate the provisions and intent of this Plan, with each such entity to bear its own costs incurred in connection therewith.

**Dated: December 12, 2024**

> **Respectfully submitted, as of the date first set forth above,**
>
> **/s/ *Kim E. Thayer***
> **Kim E. Thayer, Chief Financial Officer and Chief Restructuring Officer,**
> **and Authorized signatory**
> **c/o KELLY HART PITRE**
> **One American Place**
> **301 Main Street, Suite 1600**
> **Baton Rouge, LA 70801-1916**
> **Attn: Kim E. Thayer**
> **Email  kthayer@resolveko.com**